**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MARY W.,** ) | |
| ) | **No. 25 C 4427** |
| **Plaintiff,** ) | |
| ) | **Magistrate Judge M. David Weisman** |
| **v.** ) | |
| ) | |
| **FRANK BISIGNANO,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Suzanne S. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

### Background

On January 3, 2022, plaintiff applied for benefits, alleging a disability onset date of January 3, 2022. (R.181.) Her application was denied initially, on reconsideration, and after a hearing. (R. 14-33, 191-92.) Plaintiff appealed to the Appeals Council, which denied review (R.1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 3, 2022, the application and alleged onset date. (R. 19.) At step two, the ALJ found that plaintiff has the severe impairments of "diabetes mellitus with hypoglycemic seizures; anxiety disorder; bipolar I disorder; depressive disorder and alcohol use disorder." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 20.) At step four, the ALJ found that plaintiff has no past relevant work but has the RFC to perform medium work with certain exceptions. (R. 22-32.) At step five, the ALJ found that jobs plaintiff can perform exist in significant numbers in the national economy and thus she is not disabled. (R. 32-33.)

Plaintiff argues that the ALJ's assessment of the psychological consultants' opinions is flawed. Among other things, the consultants opined:

[Plaintiff] . . . has the concentration and ability to carry out simple tasks requiring routine judgment (e.g., few variables, assembly work). She would require simple, direct supervision for routine work tasks. She has a hx of reluctance to leave home because of anxiety but is capable of attending work regularly. Her physical conditions may reduce her persistence and pace, but her mental MDI [medically determinable impairment] alone would not preclude her ability to complete a typical workday with customary breaks (persistence limitations due to physical MDIs are evaluated elsewhere).

(R. 187, 200.) The ALJ said the doctors' opinions were "generally persuasive," but:

[T]he undersigned does not find that there is support for "a restriction related to 'simple, direct supervision for routine work tasks,' as the claimant utilized public transportation independently to attend the psychological consultative examination, which demonstrates a degree of independent decision-making, which is inconsistent with the need for supervision of routine tasks. By contrast, public transportation involves reading a schedule, understanding a map to navigate pick-up and drop-off points, and attention and awareness of which stop to disembark. The claimant reportedly utilized public transportation for a trip that took her over 60 minutes to complete (B10F/2). She understood the steps involved, and maintained attention throughout that time, and was presumably in proximity to others throughout her travel, without incident. While it is not possible to determine if she encountered any changes or delays in the public transportation schedule, it is reasonable to infer that she made simple decisions throughout her travel, choosing the time she needed to leave to arrive on time, choosing her route, her seat, and where she exited public transport to reach Dr. Fine's office. This is a single example of the claimant's abilities when she is motivated or required to complete a task. The record supports that claimant is capable of tasks of a similar complexity in a work setting.

(R. 31.) In other words, the only evidence the ALJ cited to support his rejection of the psychologists' opinions that plaintiff needed "simple, direct supervision for routine work tasks" was that plaintiff was able to use public transportation once.

That is problematic for two reasons. First, the regulations require an ALJ to consider medical opinions using a number of factors, the most important of which are how well the evidence supports the opinion and how consistent it is with the record evidence, 20 C.F.R. § 404.1520c, an analysis the ALJ did not perform. (R. 31.) Second, the psychological consultants found that plaintiff was not significantly limited in her ability to take public transportation but still concluded

3

that she needs direct supervision for routine work tasks. (*See* R. 188, 200.)[1] The error is not harmless because crediting the psychologists' opinions would likely have changed the VE's testimony and the ALJ's conclusion about the available jobs plaintiff can perform. This case must be remanded.

### Conclusion

For the reasons stated above, the Court grants plaintiff's motion [16], reverses the Commissioner's decision and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings. This case is terminated.

**SO ORDERED.**                                   **ENTERED: January 30, 2026**

**M. David Weisman**
**United States Magistrate Judge**

---

[1] Respectfully, the Court would be remiss to allow the conclusion that effectively using public transportation shows that an individual would not need "direct supervision for routine work tasks" to pass without comment. In our increasingly divided society, some need never engage our public transportation system, while others are wholly dependent upon public transportation for travel, and sadly, sometimes for shelter. The ALJ's conclusion that the ability to use public transportation means a person would not need direct supervision for routine work tasks is simply wrong. As a regular user of public transportation, the Court routinely observes individuals with apparent debilitating mental health issues effectively engage the transportation system. Moreover, and more to the point here, our public transportation systems are generally designed so all types of individuals can effectively use them, from visitors to school children, to those with limitations, to those at the upper echelons of our society. And beyond the system itself, those who work for the public transportation systems in our country are often helpful, caring public servants who, among other tasks, assist riders in getting from point A to point B. The reality that some who are vested with important decision-making responsibilities are not familiar with this public resource is worth contemplating.